UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENEGENICS, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>COSTAGENICS, dba ANTI AGING CLINIC COSTA RICA, dba HGH & TESTOSTERONE TREATMENT; and JOHN DOES 1-10, unidentified individuals and/or entities,<br><br>          Defendants. | Case No.: 20-cv-1209-WQH-WVG<br><br>**ORDER** |

HAYES, Judge:

  The matters before the Court are the Motion to Substitute BestLife Holdings, Inc. as Plaintiff in this Action (ECF No. 11) and the Motion for Default Judgment (ECF No. 12) filed by Plaintiff Cenegenics, LLC.

**I. PROCEDURAL BACKGROUND**

  On June 29, 2020, Plaintiff Cenegenics, LLC ("Cenegenics") filed a Complaint against Defendants including Costagenics, d/b/a Anti Aging Clinic Costa Rica, d/b/a HGH & Testosterone Treatment ("Costagenics"). (ECF No. 1). Plaintiff brings claims against Defendants for trademark infringement and for unfair competition under federal and California law. Costagenics is the only remaining named Defendant.

On October 6, 2020, Plaintiff filed a Proof of Service as to Defendant Costagenics. (ECF No. 5).

On December 9, 2020, Plaintiff filed a Request for Entry of Clerk Default against Defendant Costagenics. (ECF No. 9). On December 11, 2020, the Clerk of Court entered default against Costagenics. (ECF No. 10).

On January 13, 2021, Plaintiff filed a Motion to Substitute BestLife Holdings, Inc. as Plaintiff in this Action (ECF No. 11). On January 18, 2021, Plaintiff filed a Motion for Default Judgment (ECF No. 12).

## II. ALLEGATIONS IN THE COMPLAINT

Plaintiff Cenegenics is a "predominant industry leader in the field of age management medicine services through the United States . . . ." (ECF No. 1 ¶ 32). Cenegenics has developed a "personalized and comprehensive approach" to age management. (*Id.*). Patients undergo an "extensive physical evaluation . . . to determine a patient's disease risk factors and an evaluation of the body chemistry and current health baseline status," from which "Cenegenics physicians [ ] develop a fully customized program that fits the patient's lifestyle." (*Id.*). The Cenegenics age management process "has long been regarded as the gold standard by which other processes are to be measured." (*Id.* ¶ 37).

"Since about 1997, Cenegenics has maintained online websites . . . [that] promote and advertise the 'Cenegenics' brand of 'Age Management' process and techniques, and provide consumers with links to obtain an initial consultation with one of Cenegenics' trusted physicians to start the evaluation process." (*Id.* ¶ 33).

> Cenegenics has obtained . . . a federal trademark registration for the word mark "CENEGENICS" (Reg. No. 2,223,227 or the "'227 Mark") on the Principal Register for the United States Patent and Trademark Office ("USPTO") for use with age management medicine and wellness medical treatment, including, but not limited to, hormone replacement therapy, nutritional supplements and exercise counseling and therapy, in International Class 44 in connection with a website featuring Age Management techniques.

(the "Cenegenics Mark") (*Id.* ¶ 34). The Cenegenics Mark was registered on February 9, 1999, and has been used by Cenegenics since December 4, 1997. Cenegenics has also obtained a federal trademark registration for its design mark.

"Cenegenics has established valuable rights in its intellectual property through the continuous and systematic use of the Cenegenics Mark[ ] on its websites and through various forms of advertising." (*Id.* ¶ 36). As a result of Cenegenics' long use of the Cenegenics Mark, Cenegenics has developed substantial goodwill in its Mark, and the public has come to associate the Mark with the goods and services of Cenegenics. (*Id.* ¶ 56).

Defendant Costagenics is a "direct competitor[ ] in the anti-aging medicine field." (*Id.* ¶ 26). Costagenics advertises, promotes, and provides competing services online at http://www.legalhghusa.com. Costagenics "specifically target[s] residents of San Diego, CA." (*Id.* ¶ 4). Costagenics markets competing services, including "anti-aging medicine" and "human growth hormone (HGH)," using the Cenegenics Mark without Cenegenics' authorization or consent. (*Id.* ¶ 58). Costagenics' website uses the term "Cenegenics" in "clickable links," page content, and source code. (*Id.* ¶ 47). Costagenics uses the Cenegenics Mark without an "®" or "any other indicia of Cenegenics' federally-protected trademark registration." (*Id.*). Costagenics further makes false or misleading statements about Cenegenics products and services.

Costagenics is aware of the Cenegenics Mark, as evidenced by the name "Costagenics," which is "intentionally and confusingly similar" to the name "Cenegenics." (*Id.* ¶ 3). Cenegenics' use of its Cenegenics Mark significantly predates Costagenics' use.

> [C]ontinued use of the Costagenics Mark by [Costagenics] may result in loss of sales to Cenegenics, and irreparable damage to Cenegenics's reputation and goodwill, as consumers are likely to mistakenly believe that Defendants' products and services that are advertised and sold under the Costagenics Mark are sponsored, endorsed, or approved by Cenegenics, or are in some way affiliated, connected, or associated with Cenegenics, all to the detriment of Cenegenics.

(*Id.* ¶ 61).

Cenegenics brings the following claims against Costagenics: 1) trademark infringement under the Lanham Act, 15 U.S.C. § 1114; 2) trademark infringement under California common law; 3) unfair competition under the Lanham Act, 15 U.S.C. § 1125; and 4) unfair competition under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.* Cenegenics seeks the following relief: 1) injunctive relief preventing Costagenics from displaying or infringing Cenegenics' trademarks on Costagenics' website or in any sales or marketing materials and from making misleading, disparaging, or deceptive statements about Cenegenics or its products, services, or employees; 2) damages, including statutory and punitive damages; 3) a declaration "that [Costagenics]' acts of infringement were intentional, willful and that this case qualifies as 'exceptional' within the meaning of the Lanham Act, so as to entitle Cenegenics to enhanced damages, an award of attorneys' fees, and trebled costs;" and 4) attorneys' fees and costs. (*Id.* at 31-32).

## III. SUBSTITUTION OF PLAINTIFF

Cenegenics moves to substitute BestLife Holdings, Inc. as Plaintiff in this case under Rule 25(c) of the Federal Rules of Civil Procedure. Cenegenics asserts that on July 24, 2020, it assigned all of its intellectual property rights to BestLife Holdings, LLC. Cenegenics asserts that on November 5, 2020, Cenegenics was voluntarily dissolved as an LLC. Cenegenics asserts that BestLife Holdings, LLC, was converted to BestLife Holdings, Inc., and on November 23, 2020, Cenegenics' intellectual property rights were assigned to BestLife Holdings, Inc. ("BestLife"). Cenegenics asserts that BestLife continues to do business under the Cenegenics name, including operating the Cenegenics website. Cenegenics asserts that Defendant Costagenics will not suffer prejudice from the substitution because BestLife continues to operate as Cenegenics and maintains ownership of Cenegenics' trademarks. Cenegenics attaches BestLife's assignment and recordation documents to the Declaration of attorney Matthew M. Murphey. (*See* Exs. A-E to Murphey Decl., ECF No. 11-3–11-7).

4

Rule 25(c) of the Federal Rules of Civil Procedure provides that "[i]f an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). "Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands." *Educational Credit Mgmt. Corp. v. Bernal (In re Bernal)*, 207 F.3d 595, 598 (9th Cir. 2000) (quoting *Collateral Control Corp. v. Deal (In re Coving Grain Co.)*, 638 F.2d 1362, 2364 (5th Cir. 1981)). The court has discretion whether to grant or deny substitution. *See id.*

Having considered the Motion to Substitute BestLife Holdings, Inc. as Plaintiff in this Action, the Declaration of Matthew D. Murphey, and the attached exhibits, the Court concludes that substitution of BestLife as Plaintiff in this action is appropriate under Rule 25(c).

## IV. DEFAULT JUDGMENT

Plaintiff moves for default judgment on all claims against Defendant Costagenics. Plaintiff seeks a permanent injunction, attorneys' fees, and costs. Plaintiff contends that Costagenics is unwilling to participate in this litigation, and Plaintiff has no other recourse for preventing harm. Plaintiff contends that the Complaint is sufficient to state claims for trademark infringement and unfair competition under federal and California law. Plaintiff contends that it is not seeking damages on default judgment, so the sum of money at stake is low.

Rule 55(a) of the Federal Rules of Civil Procedure requires that the Clerk of the Court enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). Rule 55(b)(2) provides that the court may grant default judgment after default has been entered. *See* Fed. R. Civ. P. 55(b)(2). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d

915, 917-18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). "Factors which may be considered by courts" in determining whether default judgment should be granted include:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citing 6 MOORE'S FEDERAL PRACTICE ¶ 55-05[2], at 55-24 to 55-26).

In this case, the first, fourth, and sixth *Eitel* factors weigh in favor of default judgment. The possibility of prejudice to Plaintiff is high if the Court does not enter default judgment. Default judgment is likely Plaintiff's only recourse for recovery. Plaintiff has demonstrated that Costagenics was served with the Complaint. (*See* ECF No. 5). The Clerk of the Court has entered default against Costagenics. (ECF No. 10). The possibility that Costagenics' default was due to excusable neglect is low. Plaintiff does not seek money damages. Although there is a "strong policy . . . favoring decision on the merits," *Eitel*, 782 F.2d at 1472, "the mere existence of FED. R. CIV. P. 55(b) indicates that the seventh *Eitel* factor is not alone dispositive . . . . Defendant's failure to answer [Plaintiff]'s Complaint makes a decision on the merits impractical, if not impossible." *Phillip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003).

The second and third *Eitel* factors favor default judgment where the plaintiff "state[s] a claim on which the [plaintiff] may recover . . . ." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). In the Complaint, Plaintiff brings claims against Costagenics for trademark infringement under the Lanham Act and California common law and for unfair competition under the Lanham Act and California's UCL. The Lanham Act's provision on trademark infringement prohibits any person from using in commerce, without the consent of the registrant, "any reproduction, counterfeit, copy, or colorable imitation of a registered mark

in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on a claim for trademark infringement under the Lanham Act, the plaintiff "must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012) (quoting *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011)).

The Lanham Act's provision on unfair competition prohibits any person from using in commerce, in connection with any goods or services,

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]

15 U.S.C. § 1125(a)(1). When a claim for unfair competition under the Lanham Act is based on trademark infringement, the analysis is the same for both claims. *See Slep-Tone Entm't Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, 845 F.3d 1246, 1249 (9th Cir. 2017) ("Both legal theories share a common inquiry: '[w]hether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion?'" (citing *New W. Corp. v. NYM Co. of Cal.*, 595 F.2d 1194, 1201 (9th Cir. 1979))). Claims for trademark infringement and unfair competition under California law are "subject to the same legal standards as [ ] Lanham Act trademark claim[s]." *Rearden*, 683 F.3d at 1221; *see also Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) (The Court of Appeals for the Ninth Circuit has "consistently held that state common law claims of unfair competition and actions pursuant to California Business

and Professions Code § 17200 are substantially congruent to claims made under the Lanham Act").

### a. **Protectible Ownership Interest**

Registration of a mark "constitutes prima facie evidence of the validity of the registered mark and of [the registrant's] exclusive right to use the mark on the goods and services specified in the registration." *Brookfield Commc'ns., Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999); 15 U.S.C. § 1115(a). However, "a party pursuing a trademark claim must [also] meet a threshold 'use in commerce' requirement." *Rearden*, 683 F.3d at 1203.

> It is axiomatic in trademark law that the standard test of ownership is priority of use. To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services.

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) (citing 2 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 16.03 (3d ed. 1996)).

In the Complaint, Plaintiff alleges that it

> obtained . . . a federal trademark registration for the word mark "CENEGENICS" (Reg. No. 2,223,227 or the "'227 Mark") on the Principal Register for the United States Patent and Trademark Office ("USPTO") for use with age management medicine and wellness medical treatment, including, but not limited to, hormone replacement therapy, nutritional supplements and exercise counseling and therapy, in International Class 44 in connection with a website featuring Age Management techniques.

(ECF No. 1 ¶ 34). Plaintiff alleges that the Cenegenics Mark was registered on February 9, 1999. A copy of the registration is attached to the Complaint. (*See* Ex. A to Compl., ECF No. 1-2). Plaintiff alleges that Cenegenics has used the Mark since December 4, 1997, in advertising age management products and services on the Cenegenics website, including hormone replacement therapy, nutritional supplements, and exercise counseling and

therapy. Plaintiff alleges that "upon information and belief, [Cenegenics' use of the Mark] significantly predate[s] Costagenics's use" (*Id.* ¶ 59). Plaintiff's factual allegations, taken as true, support an inference that Plaintiff "has a protectible ownership interest" in the Cenegenics Mark. *Rearden*, 683 F.3d at 1202 (quoting *Network Automation*, 638 F.3d at 1144).

### b. <u>Likelihood of Confusion</u>

"The test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Grp. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998). There are eight factors courts may consider in assessing the likelihood of confusion:

> (1) strength of the allegedly infringed mark; (2) proximity or relatedness of the goods; (3) similarity of the sight, sound, and meaning of the marks; (4) evidence of actual confusion; (5) degree to which the marketing channels converge; (6) type of the goods and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendant in selecting the allegedly infringing mark; and (8) likelihood that the parties will expand their product lines.

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992) (quoting *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348-49 (9th Cir. 1979)).

"The use of a competitor's trademark for purposes of comparative advertising is not trademark infringement 'so long as it does not contain misrepresentations or create a reasonable likelihood that purchasers will be confused as to the source, identity, or sponsorship of the advertiser's product.'" *SSP Agric. Equip., Inc. v. Orchard-Rite Ltd.*, 592 F.2d 1096, 1103 (9th Cir. 1979) (quoting *Smith v. Chanel, Inc.*, 402 F.2d 562, 563 (9th Cir. 1968)). The mere fact that a defendant uses comparative advertising does not immunize it against claims of infringement where "the use of the trademark serves to mislead consumers rather than truthfully inform them of their choice of products." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137, 1153 (9th Cir. 2011). "The

labeling and appearance of the advertisements as they appear on the results page includes more than the text of the advertisement, and must be considered as a whole." *Id.* at 1154.

In the Complaint, Plaintiff alleges that Cenegenics is a "predominant industry leader in the field of age management medicine services through the United States . . . ." (ECF No. 1 ¶ 32). Plaintiff alleges that Cenegenics' age management process "has long been regarded as the gold standard by which other processes are to be measured." (*Id.* ¶ 37). Plaintiff alleges that since 1997, Cenegenics has featured the Cenegenics Mark prominently throughout the Cenegenics website, including advertising hormone replacement therapy, nutritional supplements, and exercise counseling and therapy. Plaintiff alleges that as a result of Cenegenics' long use of the Cenegenics Mark, Cenegenics "has developed substantial goodwill in [its] marks, and the public has come to associate the Cenegenics Marks with the goods and services of Cenegenics." (*Id.* ¶ 56).

Plaintiff alleges that Defendant Costagenics is a "direct competitor[ ] in the anti-aging medicine field." (*Id.* ¶ 26). Plaintiff alleges that Costagenics markets its competing services and products, including "anti-aging medicine" and "human growth hormone (HGH)," on Costagenics' website using the Cenegenics Mark without Plaintiff's authorization or consent. (*Id.* ¶ 58). Plaintiff alleges that Costagenics uses the Cenegenics Mark without an "®" or "any other indicia of Cenegenics' federally-protected trademark registration" in "clickable links," page content, and source code that falsely suggest that Costagenics is associated with Cenegenics. (*Id.* ¶ 47).

Plaintiff attaches exhibits to the Declaration of attorney Meghan C. Murphey showing screenshots of Costagenics' website "as it existed prior to the filing of this litigation." (Murphey Decl., ECF No. 12-3 ¶¶ 4-19). The screenshots show the following uses of the Cenegenics Mark on the Costagenics website: 1) in source code for various webpages; 2) in clickable "tags" for "Cenegenics Cost" listed after an article on "Bananas and Human Growth Hormone" (Ex. 10 to Murphey Decl., ECF No. 12-13 at 3); 3) in webpage addresses (*see, e.g.*, Ex. 4 to Murphey Decl., ECF No. 12-7 at 2 ("http://www.legalhghusa.com/cenegenics-cost-san-diego-california-hgh/"); and 4) in

webpage content (*see, e.g.*, *id.* (webpage titled "Cenegenics Cost San Diego, California HGH" stating, "San Diego, California residents now have a lower priced option to what Cenegenics cost for an age management program. Costagenics . . . offers San Diego, California residents a quality age management program at a fraction of the monthly budget over what Cenegenics cost")). Plaintiff alleges that Costagenics has acknowledged the existence of Costagenics and its Mark by repeatedly using the Cenegenics Mark on the Costagenics website, making disparaging comments and critiques about Costagenics' products and services, and choosing the confusingly similar name "Costagenics." The Director of Marketing and Analytics for BestLife states in her Declaration that "the program offered by Defendant in no meaningful way compares to the industry-leading program Plaintiff has been offering for over two decades." (Boboescu Decl., ECF No. 12-2 ¶ 10).

Having considered the *AMF* factors and the exhibits attached to the Declaration of Meghan C. Murphey, and taking the allegations in the Complaint as true, the Court concludes that the filings in this action support an inference that "the defendant's use of the mark is likely to cause consumer confusion." *Rearden*, 683 F.3d at 1202 (quoting *Network Automation*, 638 F.3d at 1144). Plaintiff is entitled to default judgment on the first through fourth claims for trademark infringement under the Lanham Act, trademark infringement under California common law, unfair competition under the Lanham Act, and unfair competition under the UCL.

## V. INJUNCTIVE RELIEF

Plaintiff requests a permanent injunction enjoining Costagenics and "its respective officers, directors, employees, agents, attorneys, and all other persons or entities acting in concert with Costagenics" from the following: 1) "displaying the '227 Mark, or any colorable imitation of the same, anywhere on Costagenics' website or promotional materials and/or using the '227 Mark in the source code for such websites, except for use in connection with lawful comparative advertising in a non-misleading manner;" 2) "purchasing AdWords containing the Cenegenics Mark, so as to misdirect internet users

searching the term 'Cenegenics,' except for use in connection with lawful comparative advertising in a non0misleading manner;" 3) "making and/or publishing false, misleading, or disparaging statements about Plaintiff and its products and services;" 4) "unfairly competing with Plaintiff by further acts of infringement and unauthorized use of the '227 Mark;" and 5) "falsely suggesting any affiliation or endorsement by Plaintiff of Costagenics' products and services by further acts of infringement and unauthorized use of the '227 Mark, pursuant to 15 U.S.C. § 1116 and Rule 65(d) of the Federal Rules of Civil Procedure."[1] Plaintiff contends that injunctive relief is appropriate because, absent injunctive relief, Costagenics' infringement is likely to continue and will damage the value of the Cenegenics marks, confuse customers, and harm Costagenics' goodwill. Plaintiff contends that an injunction is in the public interest of avoiding confusion caused by trademark infringement.

According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Id.*. "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

In this case, the Court has determined that Plaintiff is entitled to default judgment on its claims for trademark infringement and unfair competition Plaintiff has demonstrated a

---

[1] The quoted language is taken from the Proposed Order submitted by Plaintiff with the Motion for Default Judgment.

12

20-cv-1209-WQH-WVG

likelihood of success on the merits. "[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (citing *Reno Air Racing Association, Inc. v. McCord*, 452 F.3d 1126, 1137-38 (9th Cir. 2006)). The Director of Marketing and Analytics for BestLife states in her Declaration that Costagenics' use of Plaintiff's intellectual property is damaging to Plaintiff because it is "likely to confuse consumers" and because Costagenics makes statements on its website that are "deceptive and disparaging as to the quality and affordability of the industry-leading age management services provided by Plaintiff in the Cenegenics name." (Boboescu Decl., ECF No. 12-2 ¶¶ 8, 10). Plaintiff fails to present evidence that it has suffered irreparable injury. *See Herb Reed Enters.*, 736 F.3d at 1250 ("Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm," but "unsupported and conclusory statements regarding harm" that the plaintiff believes it might suffer are insufficient; actual evidence of likely irreparable harm is required). In addition, attorney Meghan C. Murphey states in her Declaration that for the exhibits attached to her Declaration, since the filing of this action "all references to Cenegenics have been removed or concealed from the webpage[s] and the source code to the webpage[s]." (Murphey Decl., ECF No. 12-3 ¶¶ 4, 7, 8, 10, 13, 16-19). There is no evidence that there is continuing trademark infringement that would cause irreparable harm. The Court concludes that Plaintiff is not entitled to the requested permanent injunctive relief.

## VI. ATTORNEYS' FEES AND COSTS

Plaintiff requests that the Court award attorneys' fees and costs. The Lanham Act allows a court to award reasonable attorneys' fees to the prevailing party in "exceptional cases." *See* 15 U.S.C. § 1117(a); *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000). "[A] trademark case is exceptional for the purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate, or willful." *Lindy Pen Co. v. BIC Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993); *see also Taylor Made Golf Co. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 663 (S.D. Cal. 1997) ("[A] case may be considered

'exceptional' where the defendant disregards the proceedings and does not appear."). The Lanham Act further entitles a prevailing party to an award of costs. *See* 15 U.S.C. § 1117(a) ("When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office [or] a violation under section 1125(a) or (d) . . . shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled . . . to recover (3) the costs of the action.").

Defendant Costagenics has failed to appear in this action. The Court has determined that the possibility that Costagenics's default was due to excusable neglect is low. Plaintiff's allegations in the Complaint support an inference that Costagenics' infringement was willful, including repeated references to "Cenegenics" on Costagenics' website, and by choosing the confusingly similar name "Costagenics." *See Rio Props. v. Rio Int'l Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) (holding that the district court properly awarded attorneys' fees and costs under the Lanham Act on default judgment, taking plaintiff's allegations as true). The Court concludes that Plaintiff is entitled to reasonable attorneys' fees and costs.

## VII.   CONCLUSION

IT IS HEREBY ORDERED that the Motion to Substitute BestLife Holdings, Inc. as Plaintiff in this Action (ECF No. 11) is granted. BestLife Holdings, Inc., is substituted as Plaintiff in this action.

IT IS FURTHER ORDERED that within twenty-one (21) days of the date of this Order, Plaintiff may file any motion for attorneys' fees. The Motion for Default Judgment (ECF No. 12) shall be held in abeyance. After the twenty-one-day period, the Court will rule on the Motion for Default Judgment.

Dated:  March 25, 2021

Hon. William Q. Hayes
United States District Court